**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Alexander H.,[1]

Plaintiff,

v.

Frank Bisignano,
Acting Commissioner of Social Security,

Defendant.

Case No. 25-cv-4399 (SGE)

**ORDER**

---

This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. § 405(g). On appeal, Plaintiff Alexander H. seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). Both Ms. H and the Commissioner have fully briefed their positions, and this matter is now ripe for review. (Dkts. 15, 21, 22.) For the reasons below, the Court denies Ms. H's request for relief and grants the Commissioner's request for relief.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

## BACKGROUND

Ms. H applied for DIB under Title II and SSI under Title XVI on June 2, 2023, alleging a disability onset date of October 1, 2021. (Admin. R. at 26.) Ms. H's claims were initially denied on September 25, 2023, and upon reconsideration on December 22, 2023. (*Id.*) Ms. H then requested that an ALJ review the denials. (*Id.*) On September 30, 2024, the ALJ held an administrative hearing at which Ms. H, accompanied by counsel, and an independent vocational expert ("VE") testified. (*Id.*; *id.* at 37-77.) The ALJ issued a decision on November 26, 2024, denying Ms. H's request for disability benefits. (*Id.* at 18-31.)

In reaching her decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[2] At step one the ALJ determined that Ms. H had not engaged in substantial gainful activity since October 1, 2021, the alleged disability onset date. (Admin. R. at 20.) At step two, the ALJ found that Ms. H had the following severe impairments: major depressive disorder, adjustment disorder, autism spectrum disorder, post-traumatic stress disorder, social anxiety disorder, and generalized

---

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes that a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i–v).

anxiety disorder. (*Id.* at 21.) At step three, the ALJ determined that Ms. H did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under appendix 1 to subpart P of part 404. (*Id.* at 21-24.) The ALJ then made the following residual functional capacity ("RFC") determination:

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple tasks in a routine work setting, but not at a production rate pace, for example, no assembly line work. She is limited to occasional changes in the workplace that are well explained in advance. She is limited to occasional interaction with supervisors, coworkers, and the general public. She should have no interaction with the general public in terms of the essential functions of the job.

(*Id.* at 24.) After determining Ms. H's RFC, the ALJ found at step four that Ms. H could perform her past relevant work as a warehouse worker. (*Id.* at 29-30.)

At step five, the ALJ found that other jobs also existed in significant numbers in the national economy that Ms. H could perform. (*Id.* at 30.) Relying on the testimony from the VE, the ALJ found that Ms. H could perform the job requirements of "packager," of which there are 96,000 jobs available nationally; "cleaner," of which there are 110,000 jobs nationally; and "car detailer," of which there are 109,600 jobs nationally. (*Id.* at 31.) Because the ALJ determined that Ms. H could perform jobs that exist in significant numbers in the national economy, she concluded that she was not disabled. (*Id.* at 35-36.)

Ms. H sought review of the ALJ's decision by the Appeals Council, which was denied on September 18, 2025. (*Id.* at 2-4.) Ms. H then filed this action challenging the ALJ's decision. (Dkt. 1.)

**STANDARD OF REVIEW**

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

## ANALYSIS

Ms. H raises two challenges to the ALJ's decision: (1) the ALJ failed to include the qualitative restriction that her interactions with others be "superficial," as recommended by psychologists, and instead applied the quantitative restriction that her interactions with others be "occasional;"[3] and (2) the ALJ failed to properly evaluate her subjective complaints. Ms. H therefore asks this Court to remand for further proceedings. The Commissioner counters that the RFC is supported by substantial evidence and asks the Court to affirm the ALJ's decision.

### I. Failure to Adopt Medical Opinions

An ALJ is "free to accept some, but not all, of a medical opinion" and "is not required to 'explicitly reconcile every conflicting shred of medical evidence.'" *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)); *Nash*, 907 F.3d at 1091 (explaining that an ALJ need not "mechanically list and reject every possible limitation") (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)). Nor is an ALJ "required to adopt the exact limitations set in the opinions she found persuasive." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) (per curiam).

Although an ALJ need not adopt a limitation set forth in a state agency's medical opinion, a court must be able to "trace the path of the ALJ's reasoning" in declining to do

[3] The ALJ used the term "superficial" in reference to the medical experts' opinions. The experts actually used the terms "brief" and "infrequent," which could reasonably be deemed equivalent to "superficial." The Court will use the ALJ's terminology for purposes of consistency unless quoting the experts.

so, such that a court could assess whether substantial evidence supports the ALJ's decision. *Jacobs v. Astrue*, No. 08-CV-431(JMR/JJK), 2009 WL 943859, at *3 (D. Minn. Apr. 6, 2009) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). Thus, an ALJ must "construct a 'logical bridge' between the evidence and his conclusions." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The requirement to build a logical bridge in not an arduous standard; it "is a minimal articulation standard, meaning that the ALJ is not required to address every piece of evidence in writing, but must explain his rejection of uncontradicted evidence that would support the claim for benefits, in order to overcome the inference that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant." *Id.* "We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

Here, the ALJ evaluated the opinions from two state agency psychologists, Dr. Conroe and Dr. Feil. Both doctors opined that Ms. H had a "moderate limitation in interacting with others" and that she was capable of "infrequent, brief interactions [with] coworkers and supervisors." (Admin. R. at 28, 92, 101.) The ALJ found the doctors' opinions to be only partially persuasive because, she explains,

> [T]hey are not fully consistent with the general pattern of evidence contained in the hearing level record. Specifically, there is insufficient evidence to support limiting the claimant to 'superficial contact.' Instead, most examinations have revealed that she has been cooperative with mostly normal findings in her mood.

(*Id.* at 28 (citing *id.* at 423, 436, 459, 462, 469, 480, 485, 490, 494, 526, 532).)

The ALJ also evaluated the opinion of Dr. Bourdeaux, who performed a psychological consultative exam. (*Id.* at 28.) Dr. Bourdeaux opined that Ms. H "would be capable of managing the stressors found in a routine, repetitive entry-level workplace." (*Id.* at 83.) She also noted that Ms. H's autism "could adversely impact relationships in a workplace setting" but did not recommend a social interaction limitation. (*Id.*) The ALJ found Dr. Bourdeaux's opinion persuasive because it was "consistent with the general pattern of evidence contained in the hearing level record." [4] (*Id.* at 28.)

Based on the "objective medical evidence" and Ms. H's subjective complaints that were "consistent with the evidence of record," the ALJ concluded that limiting Ms. H's social interaction to "occasional" was sufficient: "The claimant's limitations in social functioning have been accommodated in the residual functional capacity by limiting [her] to occasional interaction with supervisors, coworkers, and the general public, but no interaction with the general public in terms of the essential functions of the job." (*Id.* at 29.)

It is well established that the ALJ did not have to adopt the medical opinions word-for-word. *See Jennifer L. v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-1822 (KMM/TNL), 2024 WL 4120375, (D. Minn. June 27, 2024), *R&R adopted*, 2024 WL 4003021, at *2 (D. Minn. Aug. 30, 2024) ("An RFC determination is not erroneous simply because the ALJ does not adopt, word-for-word, the limitations set forth in a medical

[4] The ALJ further considered the third-party report of Ms. H's mother, which indicated that Ms. H had difficulty getting along with "family, friends, neighbors, and other people." (Admin. R. at 28-29.) The ALJ found the report to have "some persuasive value." (*Id.* at 29.)

opinion that the ALJ finds persuasive . . . [r]ather the focus is on whether substantial evidence supports the RFC.") (citing *Wyatt*, 2023 WL 6629761, at *1). Nor did the ALJ err by leaving "superficial" out of the RFC and adding the word "occasional."

The Eighth Circuit Court of Appeals has rejected the argument that replacing "superficial" with "occasional" is reversible error. *See Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024) (rejecting as a "manufactured inconsistency" the argument that because occasional and superficial have different meanings, an ALJ's reference to "occasional" interactions while omitting psychologists' "superficial" limitation meant the ALJ's decision was inconsistent and not supported by substantial evidence); *see also Gina V. v. Bisignano*, No. 25-CV-3757 (DJF), 2026 WL 1557108, at *4 (D. Minn. June 2, 2026) (holding that *Lane* forecloses arguments based on the distinction between "occasional" and "superficial" when the ALJ includes one but not the other in the RFC); *but see Jason L. v. O'Malley*, No. 23-CV-184 (JWB/JFD), 2024 WL 965240, at *2 (D. Minn. Mar. 6, 2024) (rejecting *Lane* where the ALJ does not include any qualitative limitations on workplace interaction).

Moreover, the ALJ reasonably accounted for her rejection of a qualitative interaction limitation by citing to evidence in the record showing that Ms. H was "cooperative with mostly normal findings in her mood." (Admin R. at 28.) Ms. H argues that this evidence does not support the exclusion of qualitative limitations relating to her social interactions because it relates to mood rather than her capacity to function socially. The Court disagrees. Evidence of her positive interactions with others, including medical providers, provides insight into the duration and depth of her ability to engage with coworkers,

supervisors, and the general public. This is sufficient to establish a logical bridge between the evidence and the ALJ's conclusions. The ALJ's decision is therefore supported by substantial evidence in the record.[5]

## II. Subjective Complaints

Ms. H argues that the ALJ did not properly evaluate her subjective complaints. The ALJ must determine whether objective medical evidence shows the existence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p. After finding a medically determinable impairment, the ALJ assesses the intensity and persistence of the claimant's alleged symptoms to determine how they affect the claimant's capacity for work. 20 C.F.R. § 404.1529(c); SSR 16-3p.

"Although 'an ALJ may not discount a claimant's allegations of disabling [symptoms] solely because the objective medical evidence does not fully support them,' the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'" *Id.* (quoting *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). If an ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so," courts will defer to the ALJ's credibility determination. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

---

[5] Given this determination, the Court also finds that the ALJ's questions to the VE were appropriate. *See Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) ("[T]he ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole.").

Here, the ALJ considered Ms. H's self-reported symptoms, including that she suffers from panic attacks; does not want to physically leave her home; would be unable to go into a store; isolates herself; does not attend sporting events; has limited personal grooming; problems getting along with family, friends or neighbors; problems dealing with stress; and has difficulty performing personal care such as dressing, bathing, and shaving. (Admin. R. at 25, 44-67, 277-84.) The ALJ found, however, that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence, and that the objective evidence related to her diagnoses did not "support her alleged mental deficits." (*Id.* at 25, 26.) The ALJ specifically noted that between April 2022 and September 2024 Ms. H had normal mental status examinations including that she was "oriented times four, exhibited appropriate grooming and hygiene, had intact attention span, intact concentration, cooperative behavior, euthymic mood, and good memory." (*Id.* at 26-27, 390, 423, 426, 436, 459, 469, 480, 485, 490, 526, 532). The ALJ also noted that Ms. H's daily activities – preparing pre-packages meals, performing light household chores, and undertaking personal grooming – were "not limited to the extent one would expect given the functional deficits alleged." (*Id.* at 27.) She further found that Ms. H's prescribed treatment – described as "routine and conservative" – is "inconsistent with [her] statements concerning the intensity, persistence, and limiting effects of her symptoms." (*Id.*)

The ALJ considered the objective medical evidence, Ms. H's treatment history, her daily activities and work activity, and her subjective reports regarding her functioning in finding that she was limited, but not disabled, by her impairments. Based on this, the ALJ

reasonably concluded that the medical evidence supported imposing the limitations set forth in the RFC. (*Id.* at 29.) Thus, the ALJ gave sufficient reason - supported by substantial evidence in the record - for her credibility determination of Ms. H's subjective complaints, and this Court must defer to it. *Wildman*, 596 F.3d at 968.

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ms. H's request for relief (Dkts. 15, 22) is **DENIED**.
2. The Commissioner's request for relief (Dkt. 21) is **GRANTED**.
3. The matter is **DISMISSED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 19, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge